IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00365-REB-CBS

DOUGLAS E. MILLER; AND
FRANCES ELLEN MILLER a/k/a F. ELLEN MILLER,
    Plaintiffs,
v.

RONALD C. UNTERREINER;
HERBERT GRAETZ;
ROBERT E. MOSER;
JEFFREY UNTERREINER, CPA; and
BEGLEY YOUNG UNTERREINER & WHITE LLC,
    Defendants.

## AMENDED[1] RECOMMENDATIONS ON PENDING MOTIONS

Magistrate Judge Shaffer

    THIS MATTER comes before the court on Defendants Ronald C. Unterreiner, Herbert Graetz, Robert Moser, Jeffrey Unterreiner, CPA, and Begley Young Unterreiner & White LLC's Motion to Dismiss, Stay or Transfer (doc. #32), filed on April 16, 2013. In their motion, Defendants argue this action should be dismissed, stay or transferred to the Eastern District of Missouri to avoid duplication of time and resources, given that the same parties are litigating nearly identical claims and/or allegations in that forum. Also pending before the court is Defendants' Motion to Dismiss Second Amended Complaint (doc. # 54), filed on June 6, 2013. The latter motion challenges the legal sufficiency of the claims asserted in Plaintiffs' Second Amended Complaint (doc. #50), filed on May 23, 2013. Plaintiffs Doug and Frances Ellen

---

[1] Amended at the request of counsel to modify the trial date on pg. 5 and to add the "Advisement to the Parties."

Miller filed their Response to Motion to Dismiss, Stay or Transfer (doc. # 45) on May 7, 2013, and a Response to Motion to Dismiss Second Amended Complaint (doc. #58) on June 28, 2013. Defendants filed reply briefs (doc. ##49 and 60) on May 16, 2103 and July 2, 2013, respectively.

The court heard oral argument on the pending motions on August 8, 2013. In preparation for that hearing, the court carefully reviewed the parties' briefs, the entire court file, and considered the applicable case law. At the conclusion of the August 8th hearing, the court expressed a disinclination to dismiss the pending action or to stay all proceedings, as suggested by Defendants. However, the court signaled its intention to grant the motion to transfer.[2] This Recommendation sets forth the court's findings of fact and legal analysis.

## BACKGROUND FACTS

Douglas and Frances Miller initiated this action on February 11, 2013 with the filing of the original Complaint. That pleading asserted claims against the Timothy M. Buchheit Revocable Trust, the Jon F. Buchheit Revocable Trust, the Jeffrey J. Buchheit Revocable Trust, the Douglas P. Buchheit Revocable Trust, the Nicholas J. Buchheit Revocable Trust, the Amy Buchheit Revocable Trust, and the Ann Louise Buchheit Revocable Trust (collectively, "the Buchheit Defendants"), as well as Ronald C. Unterreiner, Herbert Graetz, Robert E. Moser, Joe Bulluck, Jeffrey Unterreiner, CPA, and Begley Young Unterreiner & White LLC. The Complaint alleges six claims for relief: breach of contract by the Buchheit Defendants; breach of contract against Defendants Ronald Unterreiner and Herbert Graetz; breach of the covenant of

---

[2]In view of the court's anticipated ruling, Defendants have filed a Notice to Withdraw Motion to Dismiss Second Amended Complaint (doc. #67), stating that "the Motion to Dismiss [Second Amended Complaint] will be withdrawn upon the issuance of an order staying all case deadlines" and transfering this action to the Eastern District of Missouri.

good faith and fair dealing against the Buchheit Defendants, Ronald Unterreiner and Herbert Graetz; and negligent misrepresentation, fraudulent disclosure, and civil conspiracy against all Defendants. On April 18, 2013, Plaintiffs voluntarily dismissed without prejudice all claims against the Buchheit Defendants.

The following information can be gleaned from the parties' submissions. Plaintiffs' claims are summarized in the Scheduling Order (doc. #43) entered by this court on April 23, 2013. Mr. and Ms. Miller contend they were wrongfully induced into purchasing an ownership interest in two Missouri companies, Blair Packaging, Inc. and Blair Leasing, LLC (collectively, "the Blair companies"), and executing an asset purchase agreement on July 27, 2010.

> The financial documentation provided and prepared by Jeffrey Unterreiner and Begley Young Unterreiner & White LLC were totally false excluding delinquent payroll tax liability and included, as profit, insurance proceeds paid from an insurance claim. After the July 27, 2010, purchases, Plaintiffs learned of still other material facts that were not disclosed, including, but not limited to, the fact that Buchheit Family Trusts were upset that Blair Packaging was not making a profit and intended to shut the company down and liquidate the assets if their interests were not sold. Through the active conspiracy of all Defendants, each of whom actively hid material facts from Plaintiffs; Plaintiffs did not discover until late 2012 the severe tax liabilities exposing them to significant penalties and interests and negatively affecting the company's ability to make a profit.

In the Scheduling Order, Plaintiffs also concede that the "negotiations for the transactions took almost a full year and during that time, Plaintiffs traveled to Missouri in 2009, and were afforded the opportunity to conduct on-site due diligence."

It further appears that in 2009, the Buchheit Trusts held a majority of the shares in the Blair companies. Ronald Unterreiner, Herbert Graetz, Robert Moser, and Joe Bullock were minority shareholders in the two companies, and Jeffrey Unterreiner and Begley Young Unterreiner and White, LLC, were accountants for the Blair companies. On August 18, 2009,

Ronald Unterreiner and Herbert Graetz traveled to Colorado to meet with the Plaintiffs and discuss their possible acquisition of the Blair companies. Subsequent negotiations occurred by telephone and electronic mail, or in person when Plaintiffs traveled to Missouri.

The Millers filed their Second Amended Complaint on May 23, 2013. In that pleading, Plaintiffs alleged that Defendant Ronald Unterreiner and Robert Graetz breached their contract with the Millers by failing to disclose material information regarding the accurate financial condition of the Blair companies, and that Unterreiner and Graetz breached the covenant of good faith and fair dealing by not disclosing all material information regarding the assets the Millers contracted to purchase. The Second Amended Complaint also alleges that Ronald Unterreiner, Herbert Gaetz, Jeffrey Unterreiner, and Begley, Young Unterreiner & White LLC are liable for negligent misrepresentations, fraudulent non-disclosure and civil conspiracy. The Second Amended Complaint remains the operative pleading in the Colorado case.

It should be noted that the instant lawsuit is not the only litigation currently pending between the parties. On December 5, 2012, two months before litigation commenced in the District of Colorado, Ronald Unterreiner filed claims in the Circuit Court of Cape Girardeau County, Missouri ("the Missouri Action"), alleging that the Millers had failed to pay amounts due under promissory notes executed on or about October 1, 2010. On February 8, 2013, Plaintiffs filed their Answer in the Missouri Action and asserted counterclaims against Ronald Unterreiner for breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation and fraud, in connection with the Millers' purchase of shares in the Blair companies. On April 30, 2013, the Millers removed the Missouri Action to the United States District Court for the Eastern District of Missouri. After motions to intervene were

4

granted, Ronald Unterreiner, Robert Moser, Herbert Graetz, Jeffrey Unterreiner and Begley Unterreinder and White LLC are aligned as plaintiffs and counterclaim defendants in the Missouri Action, and Douglas and Frances Ellen Miller are defendants and counterclaim plaintiffs. The Millers' counterclaims in the Missouri Action mirror in all significant respects the claims asserted in the Colorado action.[3]

As of June 3, 2013, the Honorable Audrey G. Fleissig, had set the following pretrial deadlines in the Missouri Action:

- Plaintiffs expert witness disclosures - August 1, 2013
- Plaintiffs' expert witness depositions - August 30, 2013
- Defendants' expert witness disclosures - October 1, 2013
- Defendants' expert witness depositions - October 31, 2013
- discovery cutoff - December 16, 2013
- dispositive motions - December 2, 2013

Judge Fleissig also has set a trial date of April 21, 2014.

In the Colorado case, the parties have a discovery cutoff of December 15, 2013, a dispositive motion deadline of January 15, 2014, a final pretrial conference on March 28, 2014, and a trial set to commence on April 14, 2014. However, Defendants in the Colorado case filed a Motion to Stay Case Deadlines (doc. #65) pending a final ruling on their Motion to Dismiss, Stay or Transfer (doc. #32). On August 30, 2013, counsel for the Millers advised that their clients have agreed to the requested stay, and further request that if this action is not transferred to the Eastern District of Missouri, that "all current discovery deadlines and dates more

---

[3]My staff has carefully examined the various pleadings filed by the parties in the Colorado and Missouri actions. The chart appended to this Recommendation compares the specific claims and corresponding allegations asserted by the Millers in each case. The allegations and claims are so similar that the typographical error found in paragraph 80 of the Second Amended Complaint in the Colorado case was incorporated in paragraph 79 of the Millers' Amended Complaint and Counterlaims in the Missouri Action.

5

specifically detailed in the Scheduling Order . . . will be recalculated allowing the parties the time necessary to conduct all discovery."

## ANALYSIS

In their Motion to Dismiss, Stay or Transfer (doc. #32), Defendants initially invoked the *Colorado River* doctrine, arguing that the Colorado action should be stayed or dismissed in deference to the earlier filed parallel action in the Missouri state courts. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Following the Millers' decision to remove the Missouri Action to the Eastern District of Missouri, Defendants modified their position to assert the "first-filed" rule and argue that Missouri provides the proper venue to resolve all pending claims and issues asserted by the parties in these parallel actions. Accordingly, Defendants argue this case should be dismissed or stayed in deference to the first-filed Missouri Action. Alternatively, Defendants suggest that this case be transferred to the Eastern District of Missouri.

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought, "for the convenience of parties and witnesses, in the interests of justice."[4] Underlying this venue transfer statute are the laudable goals of preventing "the waste 'of time, energy, and money' and 'protect[ing] litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612,

---

[4]The parties do not dispute that this action could have been brought originally in the Eastern District of Missouri. *See* 28 U.S.C. § 1391(a) (in an action where subject matter jurisdiction is based upon diversity, a civil action may be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced).

616 (1964), quoting *Continental Grain Co. v. Barge, F.B.L.-585,* 364 U.S. 19, 26-27 (1960). The district court retains discretion to resolve motions to transfer based upon an individualized, case-by-case consideration of convenience and fairness. *Wada v. United States Secret Service*, 525 F. Supp. 2d 1, 9 (D.D.C. 2007); *Ervin and Associates, Inc. v. Cisneros*, 939 F. Supp. 793, 799 (D. Colo. 1996).

Ultimately, the moving party has the burden of showing that the action could have been brought in the alternative forum, the existing forum is inconvenient, and the interests of justice are better served in the alternate forum. *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005). *See also Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1191 (D. Colo. 1999); *Chubb v. Union Pacific Railroad Co.*, 908 F. Supp. 853, 855 (D. Colo. 1995). "[U]nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992), quoting *William A. Smith Contracting Co., Inc. v. Traveler's Indemnity Co.*, 467 F.2d 662, 664 (10th Cir. 1972). *See also Employers Mutual Casualty Co. v. Bartile Roofs,* Inc., 618 F.3d 1153, 1168 n. 13 (10th Cir. 2010) ("For more than five decades, we have required the movant to demonstrate that the balance of factors 'strongly favors' a transfer of venue under § 1404(a).").

In applying § 1404(a), the district court should weigh several factors, including the plaintiff's choice of forum,

> the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflicts of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make trial easy, expeditious and economical.

7

*Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). *See also Four Corners Nephrology Associates*, *P.C. v. Mercy Medical Center*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006) (factors relevant to a transfer under § 1404(a) include the plaintiff's choice of forum, the convenience of witnesses, the accessibility of witnesses and other sources of proof, the possibility of obtaining a fair trial, and all other considerations of a practical nature that make a trial easy, expeditious and economical).

Many of the factors cited in *Chrysler Credit Corp.* have little, if any, significance under the particular facts of this case. For example, neither side has raised issues concerning the enforceability of any judgment that might be entered or the congestion of court dockets. Neither side is suggesting that the case will turn on the interpretation or application of any law unique to either Colorado or Missouri. Similarly, the parties have not argued that either the District of Colorado or the Eastern District of Missouri will provide "advantages [or] obstacles to a fair trial."

The Millers' choice of forum should be given weight in deciding a motion to transfer under § 1404(a), particularly where granting the request for transfer would simply shift the inconvenience from one party to the other. *Cf. Mohr v. Margolis, Ainsworth & Kinlow Consulting,* Inc., 434 F. Supp. 2d 1051, 1064 (D. Kan. 2006) (holding that it is best not to disturb plaintiff's choice of forum if a transfer of venue will only shift the burden on the parties). *See also Wells Fargo Financial Leasing, Inc. v. Orlando Magic*, 431 F. Supp. 2d 955, 966-97 (S.D. Iowa 2006) (noting that '[c]ourts will normally hesitate to disturb a plaintiff's choice [of forum] unless the moving party 'demonstrates that the balance of convenience and justice weighs heavily in favor of transfer'"); *Graff v. Quest Communications Corp.*, 33 F. Supp. 2d 1117, (D.

Minn. 1999)( "[S]ection 1404(a) provides for transfer to a *more* convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer.") (emphasis added).

In this case, however, Plaintiffs' choice of forum is not dispositive and, indeed, may deserve little weight given the earlier action commenced by Ronald Unterreiner. *See,e.g., American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Lafarge North America, Inc.*, 474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007) (noting that "[d]eference to a plaintiff's choice of forum can . . . be overcome by application of the first-filed rule"). The "first-filed" rule provides that "the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." *See Keymark Enterprises, LLC v. Eagle Metal Products,* 2008 WL 4787590, at *3 (D. Colo. Oct. 30, 2008) (Blackburn, J.) (quoting *Cessna Aircraft Co. v. Brown,* 348 F.2d 689, 692 (10th Cir.1965).[5] *Cf. Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir.1982) (asserting general rule that when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches under the first-to-file rule has priority to consider the case). A court should depart from the "first-filed" rule only in "extraordinary circumstances" involving inequitable conduct, bad faith, anticipatory

---

[5]The parties apparently do not dispute that Mr. Unterreiner's lawsuit in Missouri was filed prior to the instant action in Colorado. *See MedSpring Group, Inc. v. Atlantic Healthcare Group, Inc.,* 2006 WL 581018 at *3 (D. Utah March 7, 2006) ("When a state action is removed to federal court, for first-to-file purposes, the state court filing date is the date used").

suits or forum shopping. *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1298 (D. Kan. 2010)

The first-filed rule recognizes that "[t]he simultaneous prosecution in two different courts of cases relating to the same parties and issues 'leads to the wastefulness of time, energy and money.'" *Animal Health International, Inc. v. Livingston Enterprises, Inc.*, 2012 WL 1439243, at *2 (D. Colo. April 26, 2012) (quoting *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965)). *Cf. D& L Distribution, LLC v. Agxplore International, LLC*, 2013 WL 1234810, at * 4 (E.D. Pa. 2013) ("The first-filed rule is 'grounded in equitable principles' and 'encourages sound judicial administration and promotes comity among federal courts of equal rank.") (quoting *Equal Employment Opportunity Commission v. University of Pennsylvania*, 850 F.2d 969, 971 (3rd Cir. 1988)); *Wallace B. Roderick Revocable Living Trust*, 679 F. Supp. 2d at 297 ("The first-to-file rule 'normally serves the purpose of promoting efficiency well and should not be disregarded lightly.") (quoting *Church of Scientology v. United States Department of the Army*, 611 F.2d 738, 750 (9th Cir 1979)). Consistent with these goals, "[t]he second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Keymark Enterprises, LLC v. Eagle Metal Products,* 2008 WL 4787590, at *3, (quoting *Wallace B. Roderick Revocable Living Trust,* 679 F. Supp.2d at 1297).

Here, the Millers have not come forward with any evidence that would suggest the Defendants initiated litigation in Missouri in bad faith or as an exercise in forum shopping. *Cf. D & L Distribution LLC,* 2013 WL 1234810, at *9 (holding that the defendant's "desire to litigate an apparently meritorious claim in a familiar forum does not establish the requisite bad faith necessary to depart from the application of the first-filed rule"). I am also not persuaded

10

that transferring this action to the Eastern District of Missouri will disadvantage Plaintiffs in any material respect.[6] Moreover, I find that the goals of judicial economy and consistency are better advanced by transferring the action to the Eastern District of Missouri, in lieu of staying proceedings in the District of Colorado. *Cf. Equity Bank v. U.S. Bank National Ass'n*, 2012 WL 5587854, at *3 (D. Kan. Nov. 11, 2012) (the court denied defendant's motion to dismiss, but transferred the pending action to the District of Minnesota pursuant to the first-filed rule). The parties and claims in the two actions are virtually identical, and both actions arise from the same underlying business transaction. Staying the action in Colorado would have little practical value in the wake of dispositive determinations by the district court and/or jury in the Eastern District of Missouri.[7]

Further, this court cannot ignore the totality of circumstances in considering the issue of convenience. *See Kreinberg v. Dow Chemical Co.*, 496 F. Supp. 2d 329, 331 (S.D.N.Y. 2007) (transferring venue after finding that most of the operative events at issue took place in the transferee venue and concluding that "it is likely that most of the witnesses and documents are

---

[6]Cf. *Pralinsky v. Mutual of Omaha, Ins.*, 2008 WL 4532563, at *4 (N.D. Cal. Oct. 9, 2008) (in granting defendant's motion to transfer, the court rejected the argument that transfer "would give the defendant 'home field advantage,'" reasoning that "the federal courts in Nebraska are as capable as any other federal court in administering impartial justice").

[7]The doctrine of collateral estoppel applies where (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *See Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation,* 975 F.2d 683, 687 (10th Cir.1992) (citation omitted). "[A] losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107 (1991). *See also Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 546 (1990) (noting that the collateral estoppel doctrine is intended to protect parties from multiple lawsuits and the possibility of inconsistent decisions).

located there"); *United States ex rel. Ondis v. City of Woonsocket, Rhode Island*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007) (in *sua sponte* transferring the case to the District of Rhode Island, the court noted that virtually all of the operative events occurred in Rhode Island, all of the named defendants resided and worked in Rhode Island, and other named witnesses had direct connections to the transferee venue); *In re Collins & Aikman Corp. Securities Litigation*, 438 F. Supp. 2d 392, 395-397 (S.D.N.Y. 2006) (transfer motion granted where numerous party and non-party witnesses resided in the transferee forum, most relevant documents were located in the transferee forum, and the transferee forum was where the subject misrepresentations alleged were issued or originated).

Plaintiffs argue that "[f]our of the key witnesses in this matter reside in Colorado." *See* Plaintiff's Brief in Support of Response to Motion to Dismiss, Stay or Transfer, at 9. Two of those witnesses are the Millers themselves, one is "Patrick O'Neil the person who discovered the alleged fraud," and the fourth individual is "Plaintiffs' anticipated expert witness, . . . a Colorado CPA." Transfer of this action to the Eastern District of Missouri should work no hardship on Plaintiffs as it is reasonable to assume these same witnesses will figure prominently in prosecuting the Millers' counterclaims in Missouri.[8] *Cf. Barry-Wehmiller Companies, Inc. v. Marschke*, 2009 WL 3698009, at *2 (E.D. Mo. Nov. 2, 2009) (in invoking the "first-filed" rule to transfer the action to the Western District of Wisconsin, the court noted that "many of the

---

[8]The court acknowledges that transfer of this action to the Eastern District of Missouri may result in some inconvenience to Plaintiffs' counsel in Colorado. "However, '[t]he word 'counsel' does not appear anywhere in § 1404(a) and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *United States ex rel. Ondis v. City of Woonsocket, Rhode Island*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007), quoting *In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004).

12

parties, witnesses, and documents are in Wisconsin, as the underlying transaction involved the purchase of a Wisconsin company, [and] aside from the filing of and a hearing on this motion to dismiss, the case [in the Eastern District of Missouri] has not progressed such that judicial economy would be disturbed").

Accordingly, I RECOMMEND that Defendants' Motion to Dismiss Second Amended Complaint (doc. #54) be denied without prejudice. I further RECOMMEND that Defendants' Motion to Dismiss, Stay or Transfer (doc. #32) be granted in part and denied in part. The motion should be granted to the extent it seeks transfer of this action to the United States District Court for the Eastern District of Missouri. In all other respects Defendants' Motion to Dismiss, Stay or Transfer should be denied as moot.

**Advisement to the Parties**

Within **fourteen days** after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 27th day of September, 2013.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge